# Pistorius *versus* The Commonwealth.

1. Where the deceased approached the prisoner in a threatening manner, so that the latter had a reasonable belief that he was in danger of bodily harm, and acting on that belief and apprehension of danger fired a pistol shot and killed the deceased, the crime was not murder in the first degree, although the prisoner fired with the intent to kill, and there was no occasion to take life in order to save his own, or to avert great bodily harm.

2. Where the idea intended to be conveyed by the court in their charge is correct, but owing to the manner in which it is expressed the jury may have been misled into the belief that if the prisoner intended to kill he should be convicted of murder in the first degree, notwithstanding they were satisfied that he was assaulted and fired "under apprehension of bodily harm," or had a reasonable belief of danger, "founded on the manner, gestures and appearance of the deceased," this court will reverse.

3. Where the naked affirmance or negative of points by the court might not enable the jury to comprehend their bearing, it is the undoubted right and frequently the duty of the court to give such explanations or qualifications as may be necessary to enlighten them.

March 12th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Oyer and Terminer of *Montgomery county :* Of July Term 1876, No. 40.

Indictment of Blasius Pistorius for the murder of Isaac Jaquette.

Blasius Pistorius, who had recently come from Germany, was living with his brother John, on a farm adjoining that of Jaquette, the deceased. A creek, called Stony creek, separated the two farms. A difficulty had arisen between John Pistorius and Jaquette about the cows of the latter, which, in coming down to the creek to water, sometimes strayed upon the lands of Pistorius. This difficulty had occasioned considerable feeling between the two families. On the day of the homicide, the cows of Jaquette, in charge of a lad named Muloch, were driven as usual to the creek. While they were drinking the lad sat under a tree, but perceiving that the cows were wandering up the creek he started in pursuit, when the prisoner emerged from behind some bushes along the creek, and pointing a pistol and using some broken English, threatened to shoot. The boy then ran after Jaquette, who left the field where he was at work and started with the lad down to the creek. When they approached Blasius pointed the pistol at Jaquette, who picked up two stones, remarking, "if you attempt to shoot me I'll put you

off that bank." They were at this time on the opposite sides of the creek. Jaquette then walked to the other side of the creek, Blasius still keeping the pistol pointed at him. As he crossed the creek Jaquette made some remark like, "Why can't you leave my cows alone when I leave them out to water on my own ground?" The prisoner still pointing the pistol at him, Jaquette said to the lad and a little girl who was near by, "You see that; I will have him arrested." Jaquette then threw down the stones and walked up the bank towards the prisoner, who at this time had the pistol down by his side. When he was about four feet from the prisoner the latter again raised the pistol. Jaquette approached closer and as he did threw up his arm to knock away the pistol from his face, but did not touch it. When the arm of Jaquette was raised the pistol was turned, presented at Jaquette's body and fired, the prisoner having his hand on the trigger. Jaquette threw up his arms, exclaiming he was killed, and fell backwards into the creek. When requested to help carry Jaquette out of the sun the prisoner replied, "No, let him lay there and die."

The only questions passed upon by this court, were those raised by the following points submitted by the prisoner, and the answers of the court thereto.

3. If the jury find that the defendant fired the pistol when he was assaulted by the deceased, under apprehension of bodily harm, he cannot be convicted of murder in the first degree.

Answer. "This is true, unless the prisoner at the time he fired had a wilful, deliberate and premeditated intention to take the life of the deceased, and was not intended for defensive purposes."

4. If the defendant, although in no imminent peril when the deceased approached him, yet had a reasonable belief of bodily harm, founded upon the manner, gestures or appearance of the deceased, immediately before he fired the pistol, he cannot be convicted of murder in the first degree.

Answer. "This is true, unless the prisoner fired with the wilful, deliberate and premeditated intent to take the life of the deceased, and not for the purpose of self-defence."

6. If the jury find that the deceased approached the defendant in a threatening manner, and the defendant had a reasonable belief of bodily harm, although mistaken, he cannot be convicted of murder in the first degree.

Answer. "This is true, if you believe the prisoner acted upon that apprehension; but it is not true, if you find, beyond all reasonable doubt, he fired with a wilful, deliberate and premeditated intent to take life."

The result of the trial was a verdict of murder in the first degree, and the prisoner was sentenced to death. This writ was then taken and the errors assigned, *inter alia*, were the foregoing answers to defendant's points.

*George W. Rogers, Stephen S. Remak* and *James Boyd*, for plaintiff in error.—Commonwealth *v.* Drum, 8 P. F. Smith 17; Murray *v.* Commonwealth, 29 Id. 317; Kelly *v.* Commonwealth, 1 Grant 484, were authorities for the points submitted by defendants.

If the killing was done when the prisoner was assaulted and he apprehended bodily harm (as assumed by the third point), or he had a belief, founded upon the manner, gestures or appearance of the assailant (as assumed by the fourth point), how could there be that wilful, deliberate and premeditated intention to kill, referred to in the answer of the court? They are inconsistent and could not exist at the same time. Both points aver that the pistol was fired under apprehension of bodily harm, or a reasonable belief thereof, yet the answers of the court require the defendant to prove that, because death ensued he did it in self-defence, and if he fails in this, the verdict against him must be murder in the first degree. This certainly cannot be the law. It might possibly be either murder in the second degree or manslaughter, but both of these degrees of homicide are ignored by the court, and the jury are left to convict the prisoner of murder in the first degree, or acquit him entirely.

*Jacob V. Gotwalts*, District Attorney, and *George N. Corson*, for the Commonwealth.

Mr. Justice STERRETT delivered the opinion of the court, May 10th 1877.

The indictment charged the plaintiff in error and his brother jointly with the murder of Isaac Jaquette. Separate trials were awarded, and the case against Blasius Pistorius having been taken up first, the wife of the brother was called as a witness in his behalf and was objected to by the Commonwealth. The objection was sustained and the exclusion of the witness is complained of.

During the argument before us, it was stated by counsel for the plaintiff in error that John Pistorius, the husband of the witness, had been tried and acquitted, since the writ of error in this case was taken. In view of this fact, and inasmuch as the judgment is reversed on another ground, the question presented by this assignment of error has become immaterial, and it is therefore unnecessary to consider it. The trial and acquittal of the husband has removed all objection to the competency of the wife.

The second, third and fourth assignments relate to the explanations or qualifications which the court added to their affirmance of the third, fourth and sixth points, submitted by one of the prisoner's counsel.

These points refer to the same general subject and are each based upon a hypothetical state of facts, which, if found by the jury to be true, would, it is claimed, relieve the prisoner from a conviction of murder of the first degree; and the complaint is, that while each

of them was affirmed, an explanation was added which had a tendency to confuse and perhaps mislead the jury; and thus, to some extent, deprived the defendant of the benefit of the affirmance.

The instruction asked in the sixth point was : " If the jury find that the deceased approached the defendant in a threatening manner, and the defendant had a reasonable belief of bodily harm, although mistaken, he cannot be convicted of murder of the first degree." The answer of the learned judge was : " This is true, if you believe the prisoner acted on that apprehension ;" and, in the same sentence he added, " but it is not true, if you find beyond all reasonable doubt that he fired with a wilful, deliberate and premeditated intent to take life."

The point as presented was incomplete and might have been refused, but the court thought proper to affirm it with the qualification contained in the first clause of the answer, and said to the jury that it was correct if they found that the prisoner acted on the apprehension of bodily harm. There can be no reason to complain of this qualification, which in itself was quite proper. The facts, then, necessary to be found by the jury in order to sustain the proposition, as qualified and affirmed by the court, were that the deceased approached the prisoner in a threatening manner—that the latter had a reasonable belief that he was in danger of bodily harm, and that acting on that belief and apprehension of danger he fired the fatal shot. If they found these facts to be true, the effect of the instruction would be to relieve the defendant from a conviction of murder of the first degree; but, what was added by the court, in saying it was not true if " he fired with a wilful, deliberate and premeditated intent to take life," was liable to be misunderstood by the jury. They might understand it to mean that although they found all the facts embodied in the proposition as affirmed by the court, still if they found, in addition thereto, that the defendant intended to kill, they should convict him of murder of the first degree; or, at least would be justifiable in doing so. The proposition, as affirmed, presented a state of facts which, if ascertained to be true by the jury, excluded a conviction of murder of the first degree, but left them free to find a lower grade of homicide, if they thought that, under the circumstances as they really were, or as they reasonably appeared to the prisoner to be, there was no occasion to take life in order to save his own, or to avert great bodily harm ; but, being told in the same connection that the proposition was not true if he intended to kill, the jury might think, if they found this intention, that it was their duty to convict of murder of the first degree.

The answers to the third and fourth points are not entirely free from a similar objection.

The idea intended to be conveyed by the learned judge, in answering all these points, was no doubt correct, but owing to

3 NORRIS—11

[Pistorius *v.* Commonwealth.]

the manner in which it was expressed in the hurry of trial, the jury, in our judgment, may have been misled into the belief that if the prisoner intended to kill, he should be convicted of murder of the first degree, notwithstanding they were satisfied that he was assaulted and fired "under apprehension of bodily harm," or had a reasonable belief of danger "founded on the manner, gestures and appearance of the deceased." If he was assaulted and was actually in danger of great bodily harm, or if it reasonably appeared to him that he was, and the danger, either real or apparent, was so great that it could not be averted without taking the life of his assailant, he would be excusable, under the law of self-defence, in doing so, in order to save his own life or avert great bodily harm. But, under the state of facts embodied in the points, the entire acquittal of the defendant was not asked. It was not contended that he was wholly excusable on the ground of self-defence. It was simply claimed that if the facts stated in the points were found to be true, he should not be convicted of murder of the first degree, leaving it to the jury under the instruction of the court to find a lower degree of homicide if they thought the evidence justified it.

In what has been said, we do not wish to be understood as intimating that, in answering points, the court should simply affirm or negative them. Hypothetical propositions are sometimes presented to the court, quite correct in themselves, but so artfully drawn that a naked affirmance might not enable the jury to comprehend their bearing. Others again are not strictly correct and require qualification. In such cases it is the undoubted right and frequently the duty of the court, in answering, to give such explanations or qualifications as may be necessary to enable the jury to understand them. Sometimes this may be best done by presenting to the jury an alternative proposition, or suggesting to them, in connection with the answer, another or different theory or state of facts arising out of the evidence, and instructing them as to the law and their duty, in case they find them to be true.

. The remaining assignments of error are not sustained, and there is nothing in any of them requiring special notice.

With the exception of the answers to the points already noticed, the learned judge presented the case very clearly and fairly in his charge to the jury; but, for the reasons already given, we are of opinion that the case should be sent back for a new trial.

> The judgment of the Court of Oyer and Terminer is reversed and a *venire facias de novo* awarded; and it is ordered that the record be remitted to said court for another trial.