Commonwealth *v.* Pasco, Appellant.

440

Argued September 29, 1938.  Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank S. Moser,* with him *Louis Cohen,* for appellant.

*Robert M. Fortney,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BARNES, December 5, 1938:

Defendant was convicted by a jury of the murder of his wife, Antonette Pasco, with the penalty fixed at life imprisonment. He appeals from the judgment and sentence entered upon the verdict.

He lived with his wife and four children in three rooms at No. 1724 Railroad Street, in Coal Township, Northumberland County. Residing in the same house were his father-in-law and his wife's sister. Other relatives of his wife lived on the third floor of the house. Defendant quarreled frequently with his wife and her relatives.

From our review of the testimony it appears that on the evening of October 14, 1937, the defendant returned to his home from work and engaged in an altercation with his wife concerning some money received from the relief authorities. Defendant demanded the money and his wife refused to give it to him, whereupon he took her pocketbook and said that he was going out to spend the money. His wife insisted upon accompanying him. As they were leaving the house the defendant was heard to utter threats against his wife. She bade good-bye to her children and she said to them that she might not

come back again. The defendant remarked that he would not kiss his children good-bye because he knew that *he was coming back.* As they left the house he said to his wife "this is the last ride you are going to get." About ten o'clock p. m. defendant, with his wife seated in the front seat of the automobile, drove away from the house. There is evidence that he was under the influence of liquor at the time.

About midnight defendant returned home with his wife, and said to members of the family that she was intoxicated. He secured a blanket which he placed over her while she remained outside in the automobile, apparently asleep. After conversing briefly with his eleven-year-old son, he went to the car and again drove away with his wife, proceeding in the direction of Shamokin, and thence to an isolated mountain section of the county where he stopped the car and drank bottles of beer which he had purchased. Again he drove the automobile to his home, arriving there about three o'clock in the morning. He entered the house, while his wife remained in the front seat of the automobile. Defendant's sister-in-law and his son went to the car in an endeavor to persuade her to come into the house and go to bed. They were unsuccessful in their efforts to awaken her. The son reported that she was breathing hard and would not talk. Thereupon defendant went to bed and slept until about six o'clock in the morning, at which time he aroused his son and directed him to awaken his mother. When the son reached the automobile he observed that his mother's lips were blue, and he suggested to his father to drive her to the home of a doctor in Shamokin. They did so, and when the doctor examined the wife he pronounced her to be dead. While the automobile was parked before the doctor's residence the defendant was observed by his son to take something from his pocket and place it behind the cushion of the front seat of the car. After defendant's arrest the police found a black-

jack, admitted to be the property of defendant, back of the cushion where he was seen to have placed it.

The medical testimony revealed that the wife died as a result of a fractured skull and a brain hemorrhage produced by the application of external force. There was a wound about the size of a half dollar at the base of her skull behind the right ear, which appeared to have been inflicted by a blunt instrument. There were no other marks of violence upon her body.

The defendant asserts that his wife received the injury that caused her death as the result of striking her head on the concrete highway when she jumped or fell from the automobile shortly before midnight during their first automobile ride that evening. The defendant states that while he was driving his car at a speed about twenty-five miles an hour, between Shamokin and Mount Carmel, looking into the mirror he saw his wife fall out of the car and land on her back in the center of the concrete highway, immediately behind the automobile. Three witnesses testified that they assisted defendant to lift his wife, who weighed over two hundred pounds, into his automobile. One of the witnesses testified that she was unconscious at the time. The defendant insists that his wife spoke to him and said that she was all right and did not wish to go to a doctor.

It is argued on behalf of defendant that there was not sufficient evidence of his commission of the crime to sustain a conviction. It is fundamental that when a charge of crime is based upon circumstantial evidence, the facts and circumstances must not only be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence. See *Com. v. Bardolph,* 314 Pa. 579; *Com. v. Benz,* 318 Pa. 465, 472; *Com. v. Bone,* 64 Pa. Superior Ct. 44. The application of this established principle of law does not stand in the way of conviction in the present case. While the Commonwealth's evidence is largely circumstantial, it is, in our opinion, sufficient to sustain the guilt of the defendant.

The defendant many times threatened the life of his wife, and it is not disputed that they quarreled on the evening in question, as well as on numerous prior occasions. It is conceded that he owned a blackjack, capable of inflicting the wound that caused her death. That it was in his possession during the night in question is established by the testimony of a witness to whom he exhibited it in a saloon, as well as by the testimony of the police officers who found it in the automobile, and by his son who saw him place it there shortly before the doctor pronounced his mother dead. Moreover, it appears that the wound inflicted upon her was caused by a weapon of this character. That defendant had the disposition to commit the crime is evidenced by the numerous threats directed against his wife. These facts point to a wilful, deliberate and premeditated killing. They harmonize with the conclusion of the defendant's guilt, and are at variance with his contention that her death was accidental: *Com. v. Coontz*, 288 Pa. 74; *Com. v. Lockhard*, 325 Pa. 56. In our opinion the testimony was sufficient to sustain the jury's verdict, and it is well settled that in such cases the judgment of this Court will not be substituted for that of the jury: *Com. v. Wendt*, 258 Pa. 325; *Com. v. Thompson*, 321 Pa. 327.

The defendant complains of the manner in which the trial judge (1) supervised the selection of the jurors, (2) his rulings on the admission of evidence, and (3) portions of his charge to the jury. All of his contentions are without merit, and some of them are trivial in nature.

It is asserted that the court below abused its discretion in excusing ten jurors of the original panel from jury service because of illness, before the case was called for trial, and in failing to state in open court that such excuses had been made. This objection of defendant cannot be sustained. It is not the right of the defendant to require that the whole jury panel be in court at the

time his case is called for trial. The right to a trial by an impartial jury does not entitle the defendants to the service of particular jurors. Whether prospective jurors be excused before or at the trial is within the discretion of the trial judge. If the jurors be excused prior to trial it is sufficient if such action and the reason therefor "be stated in open court, so that the fact that the excuse was judicially passed upon and found to be sufficient should appear on the record": *Com. v. Payne,* 205 Pa. 101, 103. Such was the method followed by the trial judge in the present case.*

Defendant claims that the trial judge erred in sustaining certain of the Commonwealth's challenges for cause. We have reviewed the answers of the proposed jurors whose exclusion is assigned as error. With respect to one of them, the juror in response to questioning stated in substance that he had formed an opinion of the guilt or innocence of the defendant, and that it would interfere with his verdict. Other jurors were challenged for cause upon the ground that they possessed conscientious scruples against capital punishment. It is essential in the trial of cases, particularly where there is a possibility of a death penalty, to secure jurors who are free from prejudices or fixed opinions with respect to the matters at issue, in order that an impartial verdict may be reached. Moreover, it is well settled that the challenge of a proposed juror for cause is addressed to the discretion of the trial judge, and his exercise thereof will not be reversed unless a palpable abuse appears: *Com. v. Curcio,* 218 Pa. 327; *Com. v. Sushinskie,* 242 Pa. 406; *Com. v. Gelfi,* 282 Pa. 434; *Com. v. Peronace,* 328 Pa. 86.

---

* It appears from the record as follows: "The Sheriff has made return that the ten jurors on the regular panel who have not been called are reported as ill. Doctors' certificates have been presented to the court and the court is satisfied that the jurors not in attendance who are jurors on the regular panel are ill and therefore not able to be in attendance in court."

The contention of the defendant in this regard cannot be upheld.

Defendant claims that it was error to admit in evidence the blackjack found in defendant's automobile, because the Commonwealth failed to connect it with the defendant and the crime. It seems to us that the record fully sustains the action of the court below. The ownership of the weapon is admitted. That the fatal blow could have been struck by it is manifest. The Commonwealth linked the defendant with the particular weapon in that it was in his possession at about the time the crime was committed as well as immediately thereafter. In addition to which there was the evidence of defendant's threats to his wife that "I might use it on you yet": *Com. v. James,* 294 Pa. 156; *Com. v. Lockhard,* supra; *Com. v. Peronace,* supra.

The assignments of error relating to the qualification by the trial judge of two of the defendant's points for charge must also be dismissed. While the points presented by the defendant may have stated correctly applicable principles of law, the amplification of the questions of reasonable doubt and intoxication as a defense, which were embraced therein, were free from error on the part of the trial judge. His explanation of them tended to clarify the points in the minds of the jury rather than to prejudice the defendant. A party is not entitled to a categorical affirmance of requested points for charge, even though the applicable law be correctly stated, if the trial judge, in the exercise of a sound discretion, believes an explanation is required, so that the jury may better comprehend their meaning: *Pistorius v. Com.,* 84 Pa. 158; *Com. v. Loesch,* 153 Pa. 502.

A review of the charge of the trial court does not disclose any error that would justify a reversal. It is manifest that the trial judge fully performed his duty clearly to instruct the jury upon the law, with adequate and sufficient reference to the facts of the case under consideration. It was not error to refer in the charge to the

defendant's blackjack as a "deadly weapon," or to charge that malice could be implied from the use of a deadly weapon against a vital part of the body, and that an intention to kill could be inferred from such use of a deadly weapon. Such a direction follows our well settled principles: *Com. v. Drum*, 58 Pa. 9; *Com. v. Pezzi*, 284 Pa. 85; *Com. v. Lockhard*, supra.

The remaining assignments are without merit. The evidence discloses the essential elements of murder in the first degree. The penalty is warranted by the record, and the sentence must stand. Accordingly all assignments of error are overruled.

The judgment is affirmed.