Commonwealth *v.* Nelson, Appellant.

Argued May 25, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*William M. Gross,* with him *Stuart M. Neely,* for appellant.

*John A. Roe,* Assistant District Attorney, with him *H. F. Dowling,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, July 2, 1959:

Defendant was indicted for the murder of her husband, Joseph E. Nelson, hereinafter referred to as Nelson, and was convicted of voluntary manslaughter. Defendant was sentenced on December 18, 1958 to pay a fine of $5 and to be committed to the State Industrial Home for Women for an indeterminate sentence.

On March 19, 1958, defendant was in her home at 1022 South 9th Street, Harrisburg, watching television. Nelson came home about eleven o'clock. After some argument, Nelson struck at her with a poker but missed. He then caught her and beat her. As she stooped to pick up her glasses, Nelson hit her with a poker causing a severe injury to her eye. She ultimately lost the sight of her eye. Defendant went upstairs to the front bedroom and closed the door. Thinking Nelson was downstairs, she opened the door. Nelson put his foot in the door and inflicted a knife wound on defendant's arm. Defendant succeeded in closing the door and pushed the dresser against the door. Nelson went downstairs and everything was quiet. Defendant then remembered a pistol in the dresser and got it out. She knew the pistol was loaded and knew how to fire it. The room faced on a city street; it had several windows, and there was a telephone in the room. A roomer, Thomas Miller, age 85, was still in the house, which was part of a double house, and there were neighbors on the other side of the party wall. Defendant could

have telephoned the police or the neighbors, or could have called to the neighbors, or called out the window for help if she felt she needed help.

Defendant left the safety of her bedroom and started down the stairs with the loaded gun. Nelson apparently heard her coming and started up the stairs with the poker. Defendant raised the pistol and fired a bullet into her husband's head, killing him instantly. She testified twice that she remembered pulling the trigger and firing the gun, but if her husband had not come up the stairs she would never have raised it. When Nelson tumbled to the foot of the stairs she screamed for Tom Miller. She told Miller she believed she had killed her husband. She then asked Miller to call the hospital and get an ambulance. She testified that she did not intend to kill her husband and she wished he was living today.

The Commonwealth's evidence consisted principally of the written confession which defendant gave to the police, and which all parties admit was similar to her testimony on the witness stand. Defendant in her confession said "My husband, Joseph Edward Nelson, and me got along fine until about a year ago, and then little arguments started, but they never amounted to too much." In her direct testimony she testified that she figured her husband was mad or something the night of the killing, and she did not see him that way before. On cross-examination, defendant admitted that she and her husband had had many arguments, and that during one of these arguments on March 2, 1957 she had shot her husband in the leg when he had picked up a shoe and told her she had to go out with him drinking.

The Court's charge to the jury on the subject of murder and voluntary manslaughter was very fair and exceptionally able, and no objection or complaint is made by defendant to the charge! Defendant alleges four errors: (1) the evidence was insufficient to sustain the

charge of murder because malice is an essential ingredient of murder, and no malice was shown; (2) the trial Court erred in admitting defendant's testimony that she shot her husband in the leg on March 2, 1957; (3) the trial Court erred in failing to affirm defendant's point for charge as to the effect of an impairment of judgment which might have been brought on by injuries inflicted by Nelson, and (4) the trial Court erred in failing to affirm defendant's point for charge as to the right of defendant to go downstairs for a legitimate purpose, and her right to bear arms for her protection.

Defendant misunderstands the law of murder. "Murder is defined as an unlawful killing of another with malice aforethought, express or implied": *Commonwealth v. Buzard*, 365 Pa. 511, 515, 76 A. 2d 394; *Commonwealth v. Bolish*, 381 Pa. 500, 510, 511, 113 A. 2d 464. "Malice express or implied is the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances.": *Commonwealth v. Bolish*, 381 Pa., supra; *Commonwealth v. Dorazio*, 365 Pa. 291, 74 A. 2d 125; *Commonwealth v. Malone*, 354 Pa. 180, 47 A. 2d 445. This is hornbook law dating back to Blackstone's Commentaries, circa 1765.

" 'Defendant, like most defendants, proceeds on the assumption that you must believe all of his statements or confessions; of course, that is erroneous; a jury can believe all or a part of or none of a defendant's statements, confessions or testimony. . .' ": *Commonwealth v. Ballem*, 386 Pa. 20, 26, 123 A. 2d 728; *Commonwealth v. Donough*, 377 Pa. 46, 50, 103 A. 2d 694; *Commonwealth v. Homeyer*, 373 Pa. 150, 153, 94 A. 2d 743.

In *Commonwealth v. Steele,* 362 Pa. 427, 66 A. 2d 825, the Court said (page 430) : "Defendant argues that there was no evidence that the shot was fired in the heat of passion and, therefore, the conviction for voluntary manslaughter cannot stand. It has long been established that under an indictment for murder, a jury may return a verdict of voluntary manslaughter, though the evidence is insufficient to show passion or provocation, where the record discloses that defendant properly could have been convicted of murder: Commonwealth v. Arcuroso, 283 Pa. 84, 128 A. 668; Commonwealth v. Kellyon, 278 Pa. 59, 122 A. 166. In such cases, the jury is not bound to accept the version either of the Commonwealth or that of the defense, but must determine from the evidence what the true situation was at the time of the homicide: Commonwealth v. Peyton, 360 Pa. 441, 62 A. 2d 37; Commonwealth v. Flax, 331 Pa. 145, 200 A. 632; Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571.

". . . Furthermore, the use of the rifle, an admittedly deadly weapon, on a vital part of his wife's body gives rise to the inference that defendant intended the natural and probable result of his act, that result being the death of his wife: Commonwealth v. Pasco, 332 Pa. 439, 2 A. 2d 736; Commonwealth v. Weston, 297 Pa. 382, 147 A. 79; Commonwealth v. Drum, 58 Pa. 9."

In *Commonwealth v. Ballem,* 386 Pa., supra, the Court said (page 26) : ". . . Indeed, the jury could have found a specific intent to kill and therefore first degree murder from 'the offender's use of a deadly weapon, for while an intention to kill may be shown by the defendant's express words or declarations or other conduct, such intent may be just as effectively inferred from the deliberate use of a deadly weapon upon a vital part for a manifest purpose: Commonwealth v. Iacobina, supra . . . Commonwealth v. Troup, 302 Pa. 246, 253, 153 A. 337; Commonwealth v. Green, 294 Pa. 573, 584,

144 A. 743. . . .': Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317. See also to the same effect Commonwealth v. Heller, 369 Pa. 457, 87 A. 2d 287; Commonwealth v. Kelly, 333 Pa. 280, 4 A. 2d 805."

In *Commonwealth v. Donough*, 377 Pa., supra, the Court quoting from *Commonwealth v. Palermo*, 368 Pa. 28, 81 A. 2d 540, said (page 52): " ' "Voluntary manslaughter is a homicide intentionally committed under the influence of passion." Commonwealth v. Colandro, 231 Pa. 343, 350, 80 A. 571 (1911); Commonwealth v. Cargill, 357 Pa. 510, 513, 55 A. 2d 373 (1947) . . .'

"In Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571, the Court said (page 350): . . . ' "The term 'passion' as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected:" 21 Am. & Eng. Ency. of Law (2d ed.) 173. "Passion, as used in a charge defining manslaughter . . . means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection;" 6 Words & Phrases, p. 5227.' "

The Commonwealth's evidence, together with the reasonable inferences therefrom, was sufficient to prove either murder or voluntary manslaughter—"murder" if the jury believed from defendant's leaving the safety of her room after the quarrel was over that she possessed legal malice or it was "voluntary manslaughter" if the jury believed, as they did, that she shot and killed her husband in the heat of passion due to anger at his brutal treatment of her, or in terror that he might repeat the brutal beating.* There is no merit in defendant's first contention.

---

* Of course the jury could have acquitted defendant if they believed she shot in self defense.

Defendant's second contention is likewise devoid of merit.

It was not error for the District Attorney in cross-examination to elicit the fact that defendant had shot her husband a year before the killing, after she had testified how well she got along with her husband and had no reason or desire to kill him: *Commonwealth v. Musto*, 348 Pa. 300, 35 A. 2d 307; *Commonwealth v. Peyton*, 360 Pa. 441, 62 A. 2d 37; *Commonwealth v. Patskin*, 372 Pa. 402, 93 A. 2d 704; *Commonwealth v. Minoff*, 363 Pa. 287, 69 A. 2d 145; *Commonwealth v. Heller*, 369 Pa. 457, 87 A. 2d 287; *Commonwealth v. Jones*, 269 Pa. 589, 113 A. 57; *Commonwealth v. Minnich*, 250 Pa. 363, 95 A. 565; *Commonwealth v. Crossmier*, 156 Pa. 304, 27 A. 40.

In *Commonwealth v. Patskin*, 372 Pa., supra, the Court held that it was not error to admit evidence that a number of years before the killing, defendant had assaulted his wife. The Court said (page 413) : ". . . This evidence of beating his wife was admissible as showing, with other incidents, ill will, motive or malice which the defendant had toward his wife. Commonwealth v. Peyton, 360 Pa. 441, 62 A. 2d 37; Commonwealth v. Jones, 269 Pa. 589, 113 A. 57.

"In Commonwealth v. Peyton, 360 Pa. 441, 452, 62 A. 2d 37, this Court said: ' "In almost any situation—whether the fact of killing is denied, or whether self defense is pleaded, or whether it is contended that by reason of provocation the killing is reduced to manslaughter—proof of the previous relations of the prisoner and the deceased, whether friendly or hostile or whatnot, is relevant and competent." ' "

To summarize, evidence of the previous relations between defendant and the deceased are relevant and admissible for the purpose of proving ill will or motive or malice which defendant had toward the deceased,

irrespective of whether they had or had not resulted in a conviction of a prior crime. Were the law otherwise, as defendant contends it is, then a threat to kill made five minutes, or a day, or a week, or a year before the killing would be inadmissible because no crime (or no independent crime) and no conviction had resulted from this prior threat.

Defendant also contends that it was error for. the trial Court to refuse its two points for charge as to defendant's (possibly) impaired judgment and defendant's right to go downstairs and to bear arms for protection. The trial Judge does not have to affirm points for charge which correctly state the law if they are irrelevant or if they are likely to confuse the jury, or if, as in this case, the Court in its charge had already adequately covered the points requested. The Court's charge was eminently fair to the defendant, and clearly and correctly set forth the law of self defense and the rights of this defendant under the evidence which was presented in this case. The Court's failure to affirm these points does not constitute reversible error.

Judgment and Sentence affirmed.