## Commonwealth *v.* Jones, Appellant.

Argued January 11, 1973; reargued April 24, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John R. Merrick,* Public Defender, for appellant.

*Michael Joseph Melody, Jr.,* First Assistant District Attorney, and *William H. Lamb,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, May 2, 1974:
The Court being equally divided, the judgment of sentence is affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

———

OPINION IN SUPPORT OF AFFIRMANCE BY MR. JUSTICE NIX:

This appeal questions the rule in this Commonwealth which permits the trial court to refuse a charge of voluntary manslaughter under a murder indictment where the evidence does not provide a basis for finding passion or legal provocation.[1]  It is contended that in

———

[1] *Commonwealth v. Morrison,* 266 Pa. 223, 109 Atl. 878 (1920) : "[I]t is the duty of the court to submit the question of manslaughter unless it is clearly convinced there is nothing in the evidence to reduce the grade of the crime below murder; while the jury must be free to act in determining the degree of murder, there is no such requirement in distinguishing between murder and manslaughter: *Commonwealth v. LeGrange,* 227 Pa. 368. But where there is no evidence which in the least degree points to the offense of manslaughter, the court does not commit error when it refuses to charge with respect to manslaughter, . . . ." Id. at 230, 109 Atl. at 880. See also, *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632 (1938) ; *Commonwealth v. LaRue,* 381 Pa. 113, 112 A.2d 362 (1955) ; *Commonwealth v. Dews,* 429 Pa. 555, 558, 239 A.2d 382, 384 (1968). *Commonwealth v. Pava,* 268 Pa. 520, 112 Atl. 103 (1920) ; *Clark v. Commonwealth,* 123 Pa. 555, 16 Atl. 795 (1889) ; *Commonwealth v. Sutton,* 205 Pa. 605, 55 Atl. 781 (1903).

view of the statements by this court, that the jury always has the power under a murder indictment to return a verdict of voluntary manslaughter although the classical requirements of the crime of manslaughter are absent,[2] requires the court upon request to give such a charge.

The appellant, Ernest David Jones, was convicted by a jury of first degree murder and a life sentence was imposed. Motions for a new trial were argued and denied. This direct appeal followed. The evidence presented at trial indicated that the victim was shot approximately nineteen times by a .22 caliber rifle apparently while he was sleeping in a locked motor vehicle. The Commonwealth established that the rifle

---

The United States Supreme Court in *Sparf and Hansen v. United States*, 156 U.S. 51 (1895) has held: "To instruct the jury in a criminal case that the defendant cannot properly be convicted of a crime less than charged, or to refuse to instruct them in respect to the lesser offences that might, under some circumstances, be included in the one so charged—there being no evidence whatever upon which any verdict could be properly returned except one of guilty or one of not guilty of the particular offence charged—is not error; for the instructing or refusing to instruct, under the circumstances named, rests upon legal principles or presumptions which it is the province of the court to declare for the guidance of the jury." Id. at 103. (Citing with approval *Clark v. Commonwealth*, 123 Pa. 555, 16 Atl. 795 (1889). Id. at 104).

[2] See *Commonwealth v. Hill*, 444 Pa. 323, 281 A.2d 859 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970); *Commonwealth v. Harry*, 437 Pa. 532, 264 A.2d 402 (1970); *Commonwealth v. Dennis*, 433 Pa. 525, 252 A.2d 671 (1969); *Commonwealth v. Cooney*, 431 Pa. 153, 244 A.2d 651 (1968); *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A.2d 807 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 216 A.2d 337 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 191 A.2d 369 (1963); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson*, 396 Pa. 359, 152 A.2d 913 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 66 A.2d 825 (1949); *Commonwealth v. Arcuroso*, 283 Pa. 84, 128 Atl. 668 (1925); *Commonwealth v. Kellyon*, 278 Pa. 59, 122 Atl. 166 (1923).

which fired the shots causing death had been in the possession of the appellant on the morning of the day of the murder. In addition, the appellant admitted to a witness, Ms. Carolyn Hendrickson, that he in fact had shot and killed the deceased. Although conceding that there was no evidence upon which the jury could properly return a finding of voluntary manslaughter the defense specifically requested a charge of voluntary manslaughter and that request was denied and an exception allowed.

Since in recent months serious question has been raised as to our rule with reference to the right of the trial judge to refuse the charge as to voluntary manslaughter under a murder indictment a brief history at this point would be helpful in appraising the current state of the law in this regard.

Until near the end of the Fifteenth century all felonious homicides were punishable by death and by forfeiture of lands and goods; although the accused's life might be saved if he fell within the scope of benefit of clergy.[3] As yet, it had not been recognized that homicides feloniously perpetrated might differ in degree. Thus, manslaughter as a crime distinguishable from the more serious offense of murder did not exist. However, a series of statutes,[4] during the period from 1496 to 1547 withdrew benefit of clergy from murder with malice aforethought (malice prepensed). This resulted in a division of felonious homicide into two categories, that with and without malice aforethought. In the first, designated as murder, the benefit of clergy

---

[3] Moreland, The Law of Homicide 60 (1952) ; Perkins, Criminal Law 70 (1957) ; Perkins, "A Re-examination of Malice Aforethought," 43 Yale L.J. 537, 543 (1934) ; Sayre, "Mens Rea", 45 Harv. L. Rev. 974, 996, n. 82. (1932). 1 Stephen, A History of the Criminal Law of England (1883).

[4] 12 Hen. VII, c.7 (1496) ; 4 Hen. VIII, c.2 (1512) ; 23 Hen. VIII, c.1, §§3, 4 (1531) ; 1 Edw. VI, c.12, §10 (1547).

was excluded and the punishment was death. The second, homicide without malice, subsequently manslaughter, was not capital even though intentional, if committed in the heat of passion upon adequate provocation. The English court's problem was to determine when such passion should suffice to avoid the death penalty.

In addition to creating a distinction in the law of felonious homicide between the capital crime of murder and the non-capital crime of manslaughter, it was established that a person indicted for the murder of another with malice aforethought might be found guilty of manslaughter. It was reasoned that the offenses did not differ in *kind or nature* but only in degree—not in substance of the fact from murder, but only in the *ensuing circumstances,* a variance as to which did not hurt the verdict.[5] *Salisbury's Case,* 1 Plow. 101 (1554); *MacKalley's Case,* 9 Co. Rep. 65, 67b (1611). The law has to the same effect been stated by Sir Mathew Hale and by Serjeant Hawkins in their respective Pleas of the Crown.[6] 1 Hale's P.C. 449, 466; 2 Hawk. P. C. c.47, §4.

---

[5] In *MacKalley's Case,* 9 Co. Rep. 65, 67b (1611), the indictment was for murder in killing a serjeant of London, and on trial the jury returned a special verdict, submitting to the justices of the court whether thereon the prisoners were guilty of murder or manslaughter. It was answered by the judges of England "so if one is indicted of the murder of another upon malice prepense, and he is found guilty of manslaughter, he shall have judgment upon his verdict, for the killing is the substance and the malice prepense the manner of it; and, when the matter is found, judgment shall be given thereupon, although the manner is not precisely pursued." (citing *Salisbury's case, supra).*

[6] Serjeant Hawkins (vol. 2, c.47, s.4) said: "That it had been adjudged, that where the jury find a man not guilty of an indictment or appeal of murder, they are not bound to make any inquiry whether he be guilty of manslaughter, &c.; but that if they will, they may, according to the nature of the evidence, find him guilty of manslaughter or homicide se defendendo or per infortunium; for

American authorities are in accord:[7] "Pursuant to a general rule of the common law, when an indictment charges an offense that includes within its description another offense of less grade or lower degree, the jury properly may find the accused guilty of the less offense. And it is a familiar application of the doctrine that under an indictment charging murder in the common law form the defendant may be convicted of any of the grades of culpable homicide. . . . That the crime under the law and facts ought to be fixed at a higher grade or degree does not affect the application of the rule. It is deemed to be wholly within the province of the jury to fix the punishment; and even though the evidence may fully disclose that the defendant was guilty of a higher degree than that found against him still the verdict cannot be disturbed for that reason. The courts recognize that it is not an uncommon thing for a jury, out of sympathy, or what they conceive to be extenuating circumstances, to find a defendant guilty of a lower degree or grade of offense than that of which the evidence clearly convicts him; but the fact that they do so is not a ground of reversal of the verdict and judgment. Accordingly, the jury under

---

the killing is the substance, and the malice but a circumstance, a variance as to which hurts not the verdict. Yet the books seem to make this difference, that where the jury find the defendant guilty of manslaughter on an indictment of murder, they may give their verdict generally, without setting out any of the circumstances of the fact; but that they shall not be received to find him guilty generally of homicide se defendendo, or per infortunium; but must set out the whole circumstances of the fact, and in the conclusion show of what crime they find the defendant guilty, wherein if they be mistaken, it is said, that the court may notwithstanding give such judgment as shall appear to be proper from the circumstances of the fact specially set forth." See also 10 Halsbury's Laws of England §791 (3 ed. 1955).

[7] 1 Bishop on Criminal Law §780 (9th ed. 1923); 2 Michie on Homicide §342 (1914); 4 Wharton's Criminal Law and Procedure §1888 (1957).

an indictment of murder may find a verdict for [voluntary] manslaughter." 13 Ruling Case Law §65. The purpose of the rule at common law, in light of the gravity of the crime and the severity of its punishment, was two-fold: First, it was intended to prevent the prosecution from failing where some element of the crime of murder was not made.[8] Second, it was designed to redound to the benefit of the defendant, since its effect is actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence.[9]

By Act of Assembly of April 22, 1794,[10] this State varied the English common law scheme,[11] the primary objective being to limit the use of the death penalty.[12]

---

[8] *Keeble v. United States*, 412 U.S. 205, 208 (1973) ; *United States v. Whitaker*, 447 F.2d 314, 321 (C.A.D.C. 1971) ; *Kelly v. United States*, 370 F.2d 227, 229 (C.A.D.C. 1966) ; *People v. Mussenden*, 308 N.Y. 558, 562, 127 N.E.2d 551, 553 (1955) ; *Commonwealth v. Frazier*, 420 Pa. 209, 216 A.2d 337 (1966).

[9] *State v. Phinney*, 13 Idaho 307, 89 Pac. 634 (1907) ; *People v. Rytel*, 284 N.Y. 242, 30 N.E.2d 578 (1940) ; *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970) ; *Commonwealth v. Kellyon*, *supra; State v. Averill*, 85 Vt. 115, 81 Atl. 461 (1911).

[10] Laws 1794, c.1766, §1, 2. The *enacting portion* of this statute remains unchanged except that kidnapping has been added to the list of enumerated offenses. Act of June 24, 1939, P.L. 872, §701, amended Act of December 1, 1959, P.L. 1621, §1, 18 P.S. 4701.

[11] The English common law scheme purported to distinguish among homicides in terms of those that were murder, those that were manslaughter and those that were justifiable and excusable. The principal function of these distinctions was to differentiate criminal from non-criminal homicides, and criminal homicides that were capital, in the absence of royal clemency, from those that were not. See generally, Perkins, "A Re-examination of Malice Aforethought," 43 Yale L.J. 537 (1934) ; 3 Stephen, History of the Criminal Law of England c.26 (1883) ; Wechsler and Michael, "A Rationale of the Law of Homicide," 37 Colum. L. Rev. 701, 702 (1937).

[12] See generally, Keedy, "History of the Pennsylvania Statute Creating Degrees of Murder," 97 U. Pa. L. Rev. 759 (1949) ; Wechs-

The objective was accomplished by dividing the crime of murder into two degrees with the death penalty reserved for the first degree; placing the duty on the trial court to submit the question of the degree of the offense to the jury; and empowering that body to ascertain the degree of murder:

"Whereas the design of punishment is to prevent the commission of crimes, and to repair the injury that hath been done thereby to society or the individual, and it hath been found by experience, that these objects are better obtained by moderate but certain penalties, than by severe and excessive punishments: And whereas it is the duty of every government to endeavour to reform, rather than exterminate offenders, and the punishment of death ought never to be inflicted, where it is not absolutely necessary to the public safety: Therefore,

"Sec. I.  Be it enacted by the SENATE and HOUSE OF REPRESENTATIVES of the Commonwealth of Pennsylvania, in General Assembly met, and it is hereby enacted by the authority of the same, That no crime whatsoever, hereafter committed (except murder of the first degree) shall be punished with death in the state of Pennsylvania.

"Sec. II.  And whereas the several offences, which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness that it is unjust to involve them in the same punishment: *Be it further enacted by the Authority aforesaid,* That all murder, which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or

ler and Michael, "A Rationale of the Law of Homicide," 37 Colum. L. Rev. 701, 703 (1937).

burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder in the second degree; *and the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree;* but if such person shall be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly." (Emphasis added)

The purport of this statute was to vest in the jury the unfettered right to determine the degree of murder. The statute, however, was silent on the jury's common law power to determine the existence of murder or manslaughter. Subsequent interpretation determined this silence did not abrogate the jury's historically recognized mercy dispensing power, but rather continued it. Notes and commentaries[13] as to the state of the Criminal Code of Pennsylvania at that time exhibit such an intention on the part of the General Assembly:

"On an indictment of murder, the party offending *may* be acquitted of murder, and yet be found guilty of manslaughter; but the jury are not compellable so to do. *Cro. El.* 276 (464-5.)."

"In every charge of murder, the fact of killing being first proved, all the circumstances of accident, necessity, or infirmity, are to be satisfactorily proved by the prisoner, unless they arise out of the evidence proved against him. For the law presumes the fact to have been founded in malice, until the contrary appears. And when the question is, whether the homicide was committed wilfully and maliciously, or under circumstances, justifying, excusing or alleviating, it is the proper and only province of the jury, to find whether the facts alleged by way of justification, ex-

---

[13] 2 Smith, Laws of Pennsylvania 542 (1810).

cuse or alleviation, are true. . . . The jury may, and do, give general verdicts, judging both of the fact and the law. It is true the court *direct* in matter of law; and such also is the English practice. See Fost. 255. 280.
. . .

"The act of Assembly of the 22d of April, 1794, *makes no other alteration in this law, than to distinguish the shades, or degrees of crime, and apportion the punishment.*" (Emphasis added).

2 Smith, Laws of Pennsylvania, 572 (1810).

From the foregoing historical review it is apparent that the question presently before us may not be resolved solely by relying on a doctrine of lesser included offenses. Not only was the jury empowered to return a verdict of voluntary manslaughter under a murder indictment where the evidence suggested the presence of provocation and passion but also the power existed where these elements are absent. If we were to confine our analysis to the application of the doctrine of lesser included offenses it could be argued, in keeping with the common law concept, that the essence of the crime of voluntary manslaughter is the killing and the passion and provocation the manner of it. Under this concept voluntary manslaughter in all cases would be properly considered a lesser included offense. If in the alternative it is to be considered a lesser included offense only where the testimony suggests the presence of provocation and passion, such a construction would ignore the power of the jury to return the manslaughter verdict in the absence of those elements. To accept the latter paradigm is to ignore the historically recognized mercy dispensing power without reason or justification. Thus, the use of the doctrine of lesser included offenses fails to supply an answer to the ultimate question: whether the jury should be advised of a power it is recognized to possess.

Under our penal code of 1939[14] we continued to grant the jury the right to return a verdict of second degree murder even though the facts would justify a finding of murder in the first degree.[15] By decisional law we have continued to embrace the common law concept that the jury could also find voluntary manslaughter under facts justifying a finding of murder in the absence of provocation and passion. It is beyond dispute that the jury must be informed of its power to determine the degree of murder in all cases. Consistency would suggest that the same rule should be employed as to the power to decide between murder and voluntary manslaughter.

We therefore, under our supervisory power, rule that henceforth a defendant under indictment of murder will be entitled, *upon request,* to have the jury advised of its power to return a verdict of voluntary

---

[14] Act of June 24, 1939, P.L. 872, §701, as amended, Act of December 1, 1959, P.L. 1621, §1, 18 P.S. 4701.

[15] *Rhodes v. Commonwealth,* 48 Pa. 396 (1864): "The statute created a distinction, unknown to the common law, between murder in the first and second degree, and by very precise words made it the exclusive right and duty of the jury to ascertain the degree when the conviction resulted from a trial, . . .

"No doubt cases of murder of the first degree have been found in the second, but this must have been anticipated when the statute was framed, and has certainly been observed under its operation, and yet it has remained in our statute-book since 1794 unaltered in this regard. *Possibly the very distinction of degrees was invented to relieve such jurymen's consciences as should be found more tender on the subject of capital punishment, than on their proper duties under evidence.* Many men have probably been convicted of murder in the second degree, who, really guilty of the higher crime, would have escaped punishment altogether but for this distinction in degrees so carefully committed by the statute to juries." Id at 398, 399. (Emphasis added). See also *Commonwealth v. Ferko,* 269 Pa. 39, 112 Atl. 38 (1920); *Shaffner v. Commonwealth,* 72 Pa. 60 (1872); *Lane v. Commonwealth,* 59 Pa. 371 (1869).

manslaughter. While we so rule, relief need not be given to this appellant. It is clear in this case that appellant did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of second degree. There is not the slightest reason to believe that the jury would have returned a verdict of voluntary manslaughter out of sympathy or in recognition of factors that they may have deemed mitigating where these factors were not sufficiently compelling to cause them to elect the lesser alternative that was offered.[16]

Appellant has raised several other assignments of error which we find to be without merit. First, he objects to testimony by two witnesses which arguably implicated him in crimes other than the one for which he was being tried. Lula Mae Jones (appellant's mother) testified that she and her family were assaulted by appellant with a gun identified as the murder weapon some two to five hours after the murder. It is well settled that evidence of prior criminal activity, is admissible to show motive, intent, scienter, identity, plan, or common scheme. *Commonwealth v. Ross*, 413

---

[16] We need not consider appellant's constitutional arguments addressed to this point. Assuming error in this case, it would be clearly harmless. *Chapman v. California*, 386 U.S. 18 (1967).

The opinion in support of reversal predicates its constitutional objections on the assumption that under the rule existing at the time of this trial "the choice whether or not to charge [on voluntary manslaughter] is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance". We cannot accept the assumption upon which these arguments are premised. The rule in question was based upon a theory of lesser included offenses. For this purpose, manslaughter was defined in the traditional sense. Thus, it was reasoned that the right to the charge existed *only* where evidence of provocation and passion could be found. Necessarily, where there was an absence of provocation and passion there was no right to such a charge. Cf., *Keeble v. United States*, 412 U.S. 205 (1973).

Pa. 35, 195 A.2d 81 (1963). Thus, where there is a relation between the crime charged and the prior act such that proof of one " 'tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,' " evidence of the prior act is admissible. *Commonwealth v. Boykin,* 450 Pa. 25, 30, 298 A.2d 258 (1972) and *Commonwealth v. Foose,* 441 Pa. 173, 176, 272 A.2d 452 (1971) quoting *Commonwealth v. Wable,* 382 Pa. 80, 84, 114 A.2d 334 (1955). Applying this rule, we find that the testimony of Ms. Jones, establishing that appellant possessed the murder weapon two to five hours after the murder, is admissible because it tends to show the identity of appellant as the person who committed the murder.

Appellant also seeks to exclude the testimony of Carolyn Hendrickson, who stated that during the course of a sexual assault on her, appellant threatened to kill her and described how he had killed the victim in the instant case. The alleged rape was inextricably interwoven in the circumstances surrounding the admission and was crucial to an assessment of the veracity of the utterance. It is from the attending circumstances that a jury is able to determine the weight, if any, that should be assigned to an alleged admission. *Commonwealth v.* Weiss, 284 Pa. 105, 130 A. 403 (1925) ; *Commonwealth v. Shaffer,* 178 Pa. 409 (1896).

Out of an abundance of caution the trial judge immediately instructed the jury to disregard the reference to "rape", [17] nevertheless, defense counsel referred extensively to the incident during cross-examination in an obvious effort to challenge her credibility in view of the prior relationship that existed between this witness and the appellant. Additionally, counsel for the defense had been furnished with the statement of this witness prior to trial and was thus aware that

---

[17] This admonition was repeated in the charge.

she would be likely to repeat this accusation when called during the trial. No effort was made in advance to prevent any reference to the alleged rape. Under these circumstances we do not find error. *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *Commonwealth v. Glockley*, 411 Pa. 437, 192 A.2d 693 (1963).

The appellant has also assigned as error the introduction of testimony with reference to flight. The basic law in this jurisdiction is that evidence of flight is permissible for the purpose of establishing guilty knowledge. *Commonwealth v. Osborne*, 433 Pa. 297, 249 A.2d 330 (1969); *Commonwealth v. Coyle, supra.* The essence of this doctrine is based upon a premise that the person who flees does so in recognition of his wrongdoing and is seeking to avoid punishment for that conduct.

Appellant first refers to language in cases which could suggest that the accused must know that police authorities are aware of the criminal conduct and are in pursuit for that purpose. *See, Commonwealth v. Osborne, supra, Commonwealth v. Coyle, supra.* Clearly it was never intended that the question turn upon the knowledge of the officers but rather the reasons which motivated the flight. It is sufficient under this doctrine that the circumstances justify an inference that the accused actions were motivated as a result of his belief that the officers were aware of his wrongdoing and were seeking him for that purpose.

Appellant further contends that the Commonwealth has not sufficiently established the reasons for the flight. While the officers attempted to arrest him only for assault and battery and disorderly conduct, in view of appellant's effort to avoid the service which included a twenty mile chase and firing at the officers in pursuit, a reasonable inference could be drawn that appellant was under the belief that he was being pur-

sued for the more serious charge of murder. This is further corroborated by the fact that appellant (1) had previously admitted the murder to his girl friend, and (2) responded "is that all" when told by the police, upon apprehension after the flight, that they had a warrant against him for assault and battery. We find no error in the admission of this evidence.

Appellant lastly contends that the evidence was insufficient to support the verdict. To establish appellant's guilt, the Commonwealth proved that the victim was shot nineteen times with the rifle which appellant had in his possession on the day of the murder and which was found in appellant's automobile after his flight from the police. Moreover, appellant admitted to the witness, Carolyn Hendrickson, that he had shot the victim. Under the test for sufficiency: "[w]hether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty," *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972), *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972) and cases cited, we find that the evidence here was ample to support the verdict beyond a reasonable doubt.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this opinion.

---

OPINION IN SUPPORT OF REVERSAL BY MR. JUSTICE ROBERTS:

In every prosecution for murder a jury may return, and the court must accept, a verdict of voluntary manslaughter regardless of evidence capable of supporting a murder verdict.[1] Here, the trial court refused ap-

---

[1] "[U]nder an indictment charging murder, defendant may be convicted of voluntary manslaughter and a conviction for the latter

pellant's request for a charge on voluntary manslaughter, and a specific exception was taken to this refusal.

The judgment of sentence should be reversed for the reasons so clearly stated in *Commonwealth v. Davis*, by Mr. Justice POMEROY, joined by Mr. Justice MANDERINO and this writer. "[B]ecause the choice whether or not to charge [on voluntary manslaughter] is discretionary with the trial judge, and he has been furnished with no objective standards for his guidance, the challenged practice offends due process; because the practice denies the same treatment to similarly situated defendants who happen to stand before differently disposed judges, it violates the equal protection of the laws." *Commonwealth v. Davis*, 449 Pa. 468, 479, 297 A.2d 817, 818 (1972) (Opinion in Opposition to Order).[2]

---

crime will be sustained though it may clearly appear from the evidence that defendant was in fact guilty of a higher grade." *Commonwealth v. Arcuroso*, 283 Pa. 84, 87, 128 A. 668, 670 (1925). Accord, *Commonwealth v. Hill*, 444 Pa. 323, 326, 281 A.2d 859, 860 (1971) ; *Commonwealth v. Hoffman*, 439 Pa. 348, 356-57, 266 A.2d 726, 730-31 (1970) ; *Commonwealth v. Harry*, 437 Pa. 532, 535, 264 A.2d 402, 404 (1970) (per curiam) ; *Commonwealth v. Dennis*, 433 Pa. 525, 528-29, 252 A.2d 671, 672-73 (1969) ; *Commonwealth v. Cooney*, 431 Pa. 153, 157, 244 A.2d 651, 653 (1968) ; *Commonwealth v. Pavillard*, 421 Pa. 571, 576-77, 220 A.2d 807, 810 (1966) ; *Commonwealth v. Frazier*, 420 Pa. 209, 211-13, 216 A.2d 337, 338 (1966) ; *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A.2d 369, 373 (1963) ; *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959) ; *Commonwealth v. Nelson*, 396 Pa. 359, 363, 152 A.2d 913, 915 (1959) ; *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949) ; *Commonwealth v. Kellyon*, 278 Pa. 59, 61-62, 122 A. 166, 167 (1923) ; *Commonwealth v. McMurray*, 198 Pa. 51, 60, 47 A. 952, 953 (1901) ; *Commonwealth v. Gable*, 7 S. & R. 422 (Pa. 1821).

2 See also *Commonwealth v. Cannon*, 453 Pa. 389, 398, 309 A.2d 384, 390 (1973) (ROBERTS, J., dissenting, joined by POMEROY and MANDERINO, JJ.) ; id. at 400, 309 A.2d at 390 (POMEROY, J.,

The Opinion in Support of Affirmance also agrees that the practice of permitting trial courts to withhold requested instructions on voluntary manslaughter is improper and unwarranted. However, the Opinion in Support of Affirmance prefers to rest its conclusion on the supervisory powers of this Court. Since a person indicted for murder is entitled upon request to a charge on second degree murder even if the evidence indicates murder in the first degree, "consistency," we are told, requires that in a murder case, the jury upon defendant's request must be charged on voluntary manslaughter.

The Opinion in Support of Affirmance fashions a rule under this Court's supervisory powers but chooses not to apply the rule retrospectively.[3] The benefit of

dissenting, joined by ROBERTS and MANDERINO, JJ.) ; *Commonwealth v. Kenney*, 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (ROBERTS, J., dissenting, joined by POMEROY and MANDERINO, JJ.) ; *Commonmonwealth v. Davis*, 449 Pa. 468, 477, 297 A.2d 817, 819 (1972) (ROBERTS, J., Opinion in Opposition to Affirmance, joined by POMEROY and MANDERINO, JJ.) ; *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A.2d 506, 509 (1971) (POMEROY, J., dissenting, joined by ROBERTS, J.) ; *Commonwealth v. Matthews*, 446 Pa. 65, 77, 285 A.2d 510, 516 (1971) (ROBERTS, J., dissenting, joined by POMEROY, J.) ; id. at 78, 285 A.2d at 516 (POMEROY, J., dissenting, joined by ROBERTS, J.).

[3] The Opinion in Support of Affirmance recognizes the inadvisability of applying a new rule prospectively only. "At least two compelling reasons exist for applying the new rule to the instant case while otherwise limiting its application to cases arising in the future. First, if we were to merely announce the new rule without applying it here, such announcement would amount to mere *dictum*. Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it." *Molitor v. Kaneland Community Unit Dist. No. 302*, 18 Ill. 2d 11, 28, 163 N.E.2d 89, 97 (1959). See generally Mishkin, Foreward : The High Court, the Great Writ, and the Due Process

the rule announced in the Opinion in Support of Affirmance is plainly applied to the instant appellant. But relief is denied on what is a novel articulation of the harmless error theory.[4] The Opinion in Support of Affirmance reasons: "While we so rule, relief need not be given to this appellant. It is clear in this case that appellant did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of second degree." It is suggested that this statement is inaccurate both in particular and in general. Moreover, this approach is unwise and completely unworkable.

In general, harm is caused by the jury not knowing all permissible and acceptable verdicts that it may render. The jury's failure to agree on any particular verdict is irrelevant. This is the view taken by Mr. Justice POMEROY, Mr. Justice MANDERINO, and this writer in *Commonwealth v. Cannon,*[5] *Commonwealth v. Davis,*[6] *Commonwealth v. Kenney,*[7] and *Commonwealth v. Matthews,*[8] all of which were cases in

of Time and Law, 79 Harv. L. Rev. 56 (1965) ; cf. *Commonwealth v. Spencer*, 442 Pa. 328, 338, 275 A.2d 299, 305 (1971) (dissenting opinion).

[4] Note 16 of the Opinion in Support of Affirmance refers to appellant's argument that the practice of permitting trial courts discretion with respect to voluntary manslaughter charges denies him the equal protection of the laws. Without citation to apposite authority and without analysis, the Opinion in Support of Affirmance curiously concludes that a denial of equal protection can be error harmless beyond a reasonable doubt.

[5] 453 Pa. 389, 398, 400, 309 A.2d 384, 390, 390 (1973) (dissenting opinions).

[6] 449 Pa. 468, 477, 479, 297 A.2d 817, 818, 818 (1972) (Opinions in Opposition to Affirmance).

[7] 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (dissenting opinion).

[8] 446 Pa. 65, 77, 78, 285 A.2d 510, 516, 516 (1971) (dissenting opinions). Mr. Justice MANDERINO was not on the Court at the time *Matthews* was decided.

which the appellant had been convicted of murder in the first degree.

In particular, there is more than "the slightest reason" to believe that the jury may have returned a verdict of other than first degree had it known all available and allowable verdicts. The jury was told it could return a verdict of guilty of murder in the first degree, guilty of murder in the second degree, and not guilty. With only three verdict alternatives, the jury chose guilty of first degree murder. Under the view of the Opinion in Support of Affirmance and expressed since at least 1971 in dissenting opinions, the trial court when requested should have instructed the jury that in addition to the three previously-mentioned verdicts, it could find the defendant guilty of voluntary manslaughter. Can one say with certainty "beyond a reasonable doubt"[9] that a jury aware of four rather than three permissible verdicts would still have returned a verdict of guilty of first degree murder? To the extent that a jury, acting within its mercy-dispensing power, compromises in order to reach a verdict, it is assuredly conceivable that a different finding may have been reached by the jury had it been told of the permissibility of four—not three—verdicts. And the trial court would have been compelled to accept a verdict of voluntary manslaughter.[10]

Ordinarily the jury verdict is examined in light of the charge given: whether the charge is complete and accurate is determined prior to jury deliberation rather than after a verdict is returned. The deviation by the Opinion in Support of Affirmance from this settled practice is unwise and totally impracticable.

---

[9] E.g., *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973); *Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968). See also *In re Winship*, 397 U.S. 358, 361-65, 90 S. Ct. 1068, 1071-73 (1970).

[10] See note 1 supra.

According to the Opinion in Support of Affirmance, if a trial court fails to deliver a requested charge on voluntary manslaughter and a verdict of first degree murder is returned, the defendant is not entitled to a new trial. But if the jury finds the defendant guilty of murder in the second degree, then the rationale adopted by the Opinion in Support of Affirmance would grant him a new trial. To wait until the verdict is returned to decide whether the charge is prejudicially erroneous and the defendant entitled to a new trial is wasteful and illogical. Nothing justifies sanctioning such an unsound practice.

Permitting a trial court in its discretion to withhold a requested charge on voluntary manslaughter is unconstitutional because it denies an accused due process and equal protection of law.

The judgment of sentence should be reversed and appellant granted a new trial.

Mr. Justice POMEROY and Mr. Justice MANDERINO join in this opinion.