376 A.2d 617

COMMONWEALTH of Pennsylvania

v.

**Edward WHITFIELD, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1974.

Decided July 8, 1977.

Rehearing Denied Aug. 1, 1977.

28

30

F. Emmett Fitzpatrick, Jr. and J. M. Smith, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Division, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

Appellant was convicted following a jury trial of murder of the second degree, aggravated robbery and conspiracy to commit murder and robbery for his participation in the fatal beating of Raymond Townsend.[1] The trial court sentenced appellant to two concurrent ten to twenty year prison terms on the murder and robbery convictions, and suspended sentence on the conspiracy conviction.

■ Appellant contends that the trial court denied him a fair trial when it commented on the degree of his guilt on the murder charge.[2] We agree, reverse the judgment of

1. This Court has jurisdiction over the murder conviction pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977). Whitfield's appeal from his aggravated robbery conviction was properly taken to the Superior Court, which certified that appeal to this Court. No appeal was taken from the judgment of sentence of conspiracy.

2. Appellant also attacks the sufficiency of the evidence to support his murder conviction. We must address this contention in spite of a grant of a new trial on the murder charge because, if the evidence were insufficient, appellant would be entitled to be discharged rather than granted a new trial. We include the question of the sufficiency

sentence for murder, and grant appellant a new trial. However, the trial court's impermissible comment on the degree of appellant's guilt only mandates a new trial for the murder charge. Appellant's remaining claims are without merit and we accordingly affirm the judgment of sentence on the aggravated robbery conviction.

## I

In its charge to the jury, the trial court stated over objection:[3]

"The Commonwealth contends that there is nothing in the evidence in this case which would warrant any finding by the jury that the killing of Townsend was committed under provocation or momentary frenzy or passion, and with this contention the Court concurs, and *I therefore instruct you that under the evidence of this case this defendant is guilty of murder or he is not guilty of any kind of unlawful homicide.*" (emphasis added)

This comment exceeded the permissible bounds of judicial comment and improperly impinged upon the exclusive province of the jury. This expression of opinion as to the degree of appellant's guilt deprived him of a fair trial. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972).

 Contrary to the court's charge, the jury properly could have returned a voluntary manslaughter verdict in this case. In every prosecution for murder where the evidence would sustain a murder conviction, the jury may

of the evidence of his guilt of murder in the discussion of the evidence of his guilt of robbery.

Appellant also contends that the Commonwealth failed to prove that Townsend's death resulted from the beating received on August 11. This claim is without merit. The Commonwealth's medical witness testified unequivocally that death was attributable to complications arising from the injuries received in the beating.

Because we reverse appellant's conviction for murder of the second degree, we need not reach his claim that he was entitled to an instruction on voluntary manslaughter.

3. After the trial court gave this instruction, appellant specifically excepted to this charge. Appellant had previously requested an instruction on voluntary manslaughter which the trial court refused.

return, and the court must accept, a voluntary manslaughter verdict, even in the absence of any evidence of voluntary manslaughter.[4] Our cases reason that voluntary manslaughter is by definition a lesser included offense of murder,[5] and that a jury, pursuant to its inherent mercy dispensing power, may, from sympathy or awareness of extenuating circumstances, find a defendant guilty of voluntary manslaughter in the absence of any evidence of legally recognized mitigating circumstances.[6] Although voluntary man-

**4.** *Commonwealth v. Hill*, 444 Pa. 323, 326, 281 A.2d 859, 860 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 356–57, 266 A.2d 726, 730–31 (1970); *Commonwealth v. Harry*, 437 Pa. 532, 535, 264 A.2d 402, 404 (1970) (per curiam); *Commonwealth v. Dennis*, 433 Pa. 525, 528–29, 252 A.2d 671, 672–73 (1969); *Commonwealth v. Cooney*, 431 Pa. 153, 157, 244 A.2d 651, 653 (1968); *Commonwealth v. Pavillard*, 421 Pa. 571, 576–77, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 211–13, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A.2d 369, 373 (1963); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson*, 396 Pa. 359, 363, 152 A.2d 913, 915 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Kellyon*, 278 Pa. 59, 61–62, 122 A. 166, 167 (1923); *Commonwealth v. McMurray*, 198 Pa. 51, 60, 47 A. 952, 953 (1901); *Commonwealth v. Gable*, 7 S. & R. 423 (Pa.1821).

**5.** *Commonwealth v. Cain*, 471 Pa. 140, 171, 369 A.2d 1234, 1250 (1977) (Opinion in Support of Reversal) (Opinion of Roberts, J., joined by O'Brien and Manderino, JJ.); *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974) (Opinion in Support of Affirmance); *Commonwealth v. Hoffman*, 439 Pa. 348, 358–59, 266 A.2d 726, 732 (1970); *Commonwealth v. Pavillard*, 421 Pa. 571, 576–77, 220 A.2d 807, 810 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 211–12, 216 A.2d 337, 338 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 202, 191 A.2d 369, 373 (1963); *Commonwealth v. Nelson*, 396 Pa. 359, 363–64, 152 A.2d 913, 915–16 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Arcuroso*, 283 Pa. 84, 87, 128 A. 668, 670 (1925); *Commonwealth v. Kellyon*, 278 Pa. 59, 61–64, 122 A. 166, 167–68 (1923). See also *Commonwealth v. Kenney*, 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (Opinion of Roberts, J., dissenting, joined by Pomeroy and Manderino, JJ.); *Commonwealth v. Matthews*, 446 Pa. 65, 77–78, 285 A.2d 510, 516 (1971) (Roberts, J., dissenting) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.); cf. *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A.2d 506, 509 (1972) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.).

**6.** E. g., *Commonwealth v. Hill*, 444 Pa. 323, 327, 281 A.2d 859, 861 (1971); *Commonwealth v. Hoffman*, 439 Pa. 348, 358, 266 A.2d 726, 731 (1970); *Commonwealth v. Moore*, 398 Pa. 198, 208, 157 A.2d 65,

slaughter is defined in terms of provocation, heat of passion and imperfect self-defense, the defendant has no burden to introduce such factors before a voluntary manslaughter verdict is permissible. Voluntary manslaughter is a permissible verdict whether or not the defendant presents a defense.

The trial court's instruction here, that appellant was either guilty of murder or not guilty of any kind of unlawful homicide, communicated to the jury that if it determined that appellant committed the homicide, it must find that appellant committed murder and not voluntary manslaughter. This improperly impinged upon the exclusive province of the jury, particularly since the trial court did not inform the jury of its power to return a voluntary manslaughter verdict. Although appellant requested a voluntary manslaughter charge, this request was denied. Thus, the only instruction regarding voluntary manslaughter was a misstatement of the law that the jury could only return a verdict of murder or not guilty of any kind of unlawful homicide. At no time did the trial court inform the jury that voluntary manslaughter was a permissible verdict. See e. g., *Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977).

Although this Court has recognized the duty of the trial court to aid the jury in understanding and clarifying the issues to be resolved, the court's charge should be a calm and dispassionate one. *Commonwealth v. Trunk*, 311 Pa. 555, 565–66, 167 A. 333, 337 (1933). The jury depends on the trial court for guidance and it will give great weight to any

71 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 430, 66 A.2d 825, 827 (1949); *Commonwealth v. Kellyon*, 278 Pa. 59, 64, 122 A. 166, 168 (1923). See *United States v. Dougherty*, 154 U.S.App.D.C. 76, 473 F.2d 1113, 1138 (1972) (Bazelon, C. J., concurring in part and dissenting in part). See also *Commonwealth v. Kenney*, 449 Pa. 562, 570, 297 A.2d 794, 798 (1972) (Opinion of Roberts, J., dissenting, joined by Pomeroy and Manderino, JJ.); *Commonwealth v. Banks*, 447 Pa. 356, 364, 285 A.2d 506, 509 (1972) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.); *Commonwealth v. Matthews*, 446 Pa. 65, 77, 78, 285 A.2d 510, 516 (1971) (Roberts, J., dissenting) (Opinion of Pomeroy, J., dissenting, joined by Roberts, J.).

expressions of the court's personal opinion. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972); *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924). To preserve a defendant's right to a fair trial, the trial court must be careful to remain absolutely impartial, and not to invade the province of the jury. *Commonwealth v. Archambault*, supra; *Commonwealth v. Myma*, supra.

In *Archambault*, this Court, after considering the need for judicial impartiality, held that a trial court must never express to the jury its personal view of guilt or innocence no matter how overwhelming the evidence of guilt.

The Court stated:

"An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence. As Mr. Justice (later Chief Justice) Kephart stated for this Court: 'The judge occupies an exalted and dignified position; he is the one person whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box . . . . To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has the tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.' [*Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924).]"

448 Pa. at 95, 290 A.2d at 75; see *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 5.6(a) (Approved Draft, 1972) ("The trial judge should not express or otherwise indicate to the jury his personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.").

██ These considerations apply with equal force to trial courts' opinions concerning a defendant's degree of guilt. The jury's verdict in a murder trial necessarily includes not only a determination of guilt or innocence but also a determination of the degree of guilt. The latter decision is often as important as the former, particularly in homicide cases. As Mr. Justice Powell, speaking for a unanimous United States Supreme Court, recently stated:

> "The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter differ significantly."

*Mullaney v. Wilbur,* 421 U.S. 684, 698, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508 (1975). Our constitutional system of trial by jury is founded upon the firm belief that the highest quality of criminal justice is achieved when the jury retains the sole power to determine both guilt or innocence and the degree of guilt if guilt is found.

Thus, because of the court's influence over the jury, an opinion by the trial court that a defendant is either guilty of murder or not guilty of any kind of unlawful homicide effectively removes voluntary manslaughter as a potential verdict from the jury's deliberations. This is a prohibited invasion of the province of the jury and denies appellant his constitutional right to a fair trial before an impartial jury. See *Commonwealth v. Archambault,* supra.[7]

The instruction here presents a sharp contrast to the cases in which this Court has found that a trial court's expression of opinion as to the degree of a defendant's guilt was not

***

7. In *Commonwealth v. Archambault,* 448 Pa. 90, 92, 290 A.2d 72, 73 (1972), we held that the trial court's comment that "it would be a miscarriage of justice to find [the] defendant not guilty" was improper even though it might arguably aid the jury in its deliberations. However helpful the judge's comments may be, he or she may not express his or her opinion concerning the guilt or degree of guilt of the defendant, decisions which must be left to the jury.

error.[8] In *Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373 (1977), Mr. Justice Pomeroy, speaking for a majority of this Court,[9] stated that two conditions must exist before a

8. In *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974), the trial court commented that, assuming the jury found appellant maliciously killed decedent, the court could not recall any evidence of extenuating circumstances to reduce the crime to voluntary manslaughter. The court stated, however, that *voluntary manslaughter* was an "entirely permissible verdict" and "[did not] suggest that the jury return any particular verdict." Id. 455 Pa. at 319, 314 A.2d at 251. In *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217 (1976) (plurality opinion), the trial court stated that it did not "see any of those facts of [voluntary manslaughter] in this case at all." However, the trial court's comments went to the evidence which the court recollected, not to the verdict which the jury could return. In *Commonwealth v. Rivera,* 470 Pa. 131, 367 A.2d 719 (1976), the trial court stated that in its opinion "the crime of voluntary manslaughter was not involved in this case." However, the "judge stated his opinion only after he had first fully instructed the jury concerning the elements of voluntary manslaughter and told them that it was a permissible verdict. Second, immediately after making the comment . . . the judge made clear to the jury that they were not bound by his opinion and repeated that they had the 'power' to return with a verdict of voluntary manslaughter." Id. 470 Pa. at 138–39, 367 A.2d at 722–23. But see Id. at 139, 367 A.2d at 723 (dissenting opinion of Manderino, J., joined by Roberts, J.). In *Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373 (1977), the trial court stated that "under the circumstances, the crime of voluntary manslaughter would not be an appropriate verdict in this case. Because, there is no evidence, as I recall it, that there was any scene between the deceased and the person who shot him, that would argue a provocation, that a person would be transported out of their mind and kill him." Id. 471 Pa. at 426, 370 A.2d at 376. The trial court, however, fully informed the jury of its power to return a verdict of voluntary manslaughter whether supported by the evidence or not, and instructed the jury that is was not bound by the court's comments concerning the evidence because the jury is the sole finder of facts. But see Id. 471 Pa. at 428, 370 A.2d at 377 (dissenting opinion of Roberts, J., joined by Manderino, J.).

Here, unlike *Yount, Gaddy, Rivera* and *Bennett,* the trial court did not inform the jury that it had the power to return a verdict of voluntary manslaughter even absent any evidence of voluntary manslaughter or that it was not bound by the court's comments concerning the evidence. The court only instructed the jury that either appellant was guilty of murder or he was not guilty of any kind of unlawful homicide.

9. This writer adheres to the views expressed in his dissenting opinion in *Commonwealth v. Bennett,* supra, that the trial court's instructions that the jury had the power to return a verdict of voluntary manslaughter and that the jury was not bound by the court's comments on the evidence were not sufficient to cure the prejudice from

trial court may express its opinion that the evidence would not support a voluntary manslaughter verdict:

> "[I]t is clear that two principal conditions must be met before such an expression of opinion may properly be included in such a charge: (1) the trial court must fully inform the jury of its 'power' to return a verdict of voluntary manslaughter, whether supported by the evidence or not; and (2) the court must also instruct the jury that it is not bound by the court's comments concerning the evidence because it is the jury which is the sole finder of the facts."

Id. 471 Pa. at 427, 370 A.2d at 377.

Here, unlike *Bennett,* the trial court did not inform the jury that it had the power to return a verdict of voluntary manslaughter even absent any evidence of voluntary manslaughter. Unlike *Bennett,* the trial court did not instruct the jury that even though the court did not find any evidence of passion or provocation, the jury was not bound by the court's opinion.[10] Rather, the trial court instructed the jury that appellant was either guilty of murder or not guilty of any kind of unlawful homicide. This instruction misstated the law and took away from the jury its power to return a voluntary manslaughter verdict.

Appellant's trial occurred before *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974) (equally divided court), in

the challenged jury instructions. This writer also adheres to the views expressed in the dissenting opinion of Mr. Justice Manderino in *Commonwealth v. Rivera,* supra.

Under the standard suggested by these dissenting opinions, the instruction here is clearly improper. However, the instruction also fails to meet the standard set by the majority opinions in *Commonwealth v. Bennett,* supra and *Commonwealth v. Rivera,* supra.

10. At the beginning of its charge, the trial court did instruct the jury that it was the exclusive finder of facts, and that if its recollection of the evidence differed from the court's, it should substitute its recollection for the court's. However, this instruction immediately preceded the trial court's summation of the evidence, and preceded the trial court's comments as to the degree of appellant's guilt by 34 pages in the transcript. The trial court's instruction that appellant was either guilty of murder or not guilty of any kind of unlawful homicide was part of the court's discussion of the law rather than part of the court's summation of the evidence.

which all six justices who participated agreed that after the date *Jones* was filed, a trial court must give a requested charge on voluntary manslaughter in every murder trial, even though there is no evidence of voluntary manslaughter.[11] Although a majority of this Court prior to *Jones* accepted the view that a trial court had discretion whether to instruct the jury on voluntary manslaughter, e. g., *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972), our cases establish that even before *Jones,* if a trial court expressed its opinion that the evidence would not support a verdict of voluntary manslaughter, the court was required to inform the jury that it is not bound by the court's comments on the evidence and that it has the power to return a verdict of voluntary manslaughter. *Commonwealth v. Bennett,* supra; *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974). These cases recognize the difference between an instruction which omits a relevant principle of law and an instruction which affirmatively misstates the law. As Mr. Justice Stevens, writing for a majority of the United States Supreme Court, recently noted: "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

This case is controlled by the principles articulated in *Commonwealth v. Bennett,* supra, and *Commonwealth v. Yount,* supra. Here, the trial court expressed its opinion that appellant was either guilty of murder or not guilty of any kind of unlawful homicide. The trial court did not cure this prejudicial misstatement of the law by instructing the jury that it had the power to return a verdict of voluntary

11. The United States Court of Appeals for the Third Circuit held in *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir. 1974) (en banc), cert. denied, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), that due process requires that voluntary manslaughter instructions be given, if requested by the defense, in every murder trial:

> "To hold otherwise is to expose a defendant to the idiosyncracies of the trial judge to whom the case has been assigned, or the 'whim or caprice' of a given judge on a given day."

manslaughter and that it was not bound by the trial court's comments on the evidence. The trial court's comment as to the degree of appellant's guilt thus deprived him of a fair trial.[12]

## II

The trial court's impermissible comment on the degree of appellant's guilt on the murder charge only mandates a new trial for the charge of murder. This error in no way affects the judgment of sentence for aggravated robbery. Therefore we must address appellant's remaining claims.

■ Appellant first attacks the sufficiency of the evidence to support his conviction for robbery and murder of the second degree.[13] The test for sufficiency of the evidence is:

"... whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt."

*Commonwealth v. Bastone,* 466 Pa. 548, 552, 353 A.2d 827, 829 (1976); see *Commonwealth v. Kichline,* 468 Pa. 265, 271–273, 361 A.2d 282, 285–86 (1976); *Commonwealth v. Green,* 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Yount,* 455 Pa. 303, 320, 314 A.2d 242, 251 (1974); *Commonwealth v. Carbonetto,* 455 Pa. 93, 95, 314 A.2d 304, 305 (1974).

The Commonwealth's case was built largely upon the testimony of three witnesses. The first witness, Harold

---

**12.** Because of the weight the jury inevitably places on the trial court's opinion, its impact precludes a finding beyond a reasonable doubt that it had no influence on the jury's verdict. See *Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794 (1977); *Commonwealth v. Archambault,* supra; see generally *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973).

**13.** See note 2 supra.

Scott, testified that at approximately 1:00 a. m. August 11, 1970, he was with a group of persons sitting on the front steps of his house. In this group were Audrey Scott (Harold's wife), Marie Scott (no relation), Emmett Scott (Harold's brother), a man named Kirby, and a couple whose names Harold did not know.

Harold stated that a light-colored automobile occupied by a single male parked across the street from his house. Moments later, appellant, Robert Brown (appellant's half-brother), and George Bloodworth approached the light-colored car. According to Harold, Bloodworth and appellant dragged the man from the car and carried him to a nearby vacant lot. Harold heard some rustling noises. A few minutes later Bloodworth and appellant walked toward Harold's front steps. Appellant came to pick up his half-brother who had not gone onto the vacant lot but had stumbled over to Harold's steps and fallen asleep. Appellant left with his half-brother. Bloodworth offered to sell Harold a watch. When Harold refused to buy the watch, Bloodworth walked away, but returned momentarily. After again trying unsuccessfully to sell Harold a watch, Bloodworth drove off in the light-colored car.

Harold further testified that after the three men left, he heard moans and cries for help from the vacant lot. He walked over to the lot to investigate but did not enter it. Instead, Harold left to find a pay telephone; he called the police and returned to the vacant lot. The investigating officer found a seriously injured man. Harold helped the police to place this man on a stretcher.

Audrey Scott also testified that she was sitting outside her house with her husband and the others. Audrey recalled that a light-colored car occupied by a single male parked across the street and that appellant and Bloodworth removed this man from the automobile and took him to the vacant lot. At this time, she entered her house because she did not want to get involved. She stated that she came out of her house later and saw Bloodworth offer to sell her husband a watch.

Marie Scott was a third witness to the August 11 episode. She recalled sitting on the steps of Harold's house with Harold, Audrey, Emmett, and another man whose name she did not know. She testified that the car that parked across the street was black. She stated that appellant helped Bloodworth drag the occupant from his car. At this point Marie entered Harold's house. As she was entering the house, she noticed Harold walking toward Bloodworth who was dragging the man into the vacant lot.

The Commonwealth called Maryann Yeager to identify the victim. She testified that she had been living with Townsend. She last saw him alive on the morning of August 10, 1970. When she last saw Townsend, he had a watch, a wallet, and keys with him, and was in good physical condition. She testified that on that morning she had lent the victim her white, 1964 Buick. Yeager stated that Townsend called her from a bar that night. This bar is located a half block from where Townsend was discovered beaten.

When discovered, Townsend was barely conscious and unable to talk. His clothes were dirty and disarrayed, his shirt was torn, his face was bloody and swollen, and only one shoe remained on his feet. He did not have in his possession either wallet, watch, or keys.

Appellant took the stand in his own defense and denied any participation in the murder or robbery of Townsend. When asked where he was during the time in question, he stated that he could not remember.

The Commonwealth witnesses were subjected to extensive and vigorous cross-examination. As this Court stated in *Commonwealth v. McIntyre*, 451 Pa. 42, 47, 301 A.2d 832, 834 (1973), it is "within the province of the jury to accept or reject the evidence produced by the Commonwealth." Accord, *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977); *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976). Although no person witnessed the actual beating and robbery of Townsend, the circumstantial evidence offered by the Commonwealth, if believed, was

sufficient to supply a "combination of evidence link[ing] the defendant to the crime beyond a reasonable doubt." *Commonwealth v. Petrisko,* 442 Pa. 575, 580, 275 A.2d 46, 49 (1971); *Commonwealth v. McIntyre,* supra. Reviewing the whole record, we are satisfied that the jury had before it sufficient evidence to find beyond a reasonable doubt that appellant was guilty of murder of the second degree and aggravated robbery.[14]

■ Appellant's next contention is that a remark elicited by the Commonwealth from Harold Scott was so prejudicial that he was denied a fair trial. The remark was made on the third day of a six-day trial; it was the first day during which testimony was taken. The prosecutor was questioning Harold about his recollection of August 11, when the following took place.

"Q. [District attorney] Now, Mr. Scott, you were sitting on your step and you saw all this, right? You saw this guy get dragged out of the car and be taken off to the lot; is that right?

"A. [Harold Scott] Right.

"Q. Why didn't you go over and help the man?

"A. Because I was afraid.

"Q. What were you afraid of?

"A. Of them. I seen them work over people before."

Defense counsel immediately objected and a recess was called. At the conclusion of the recess, the trial court emphatically instructed the jury that it was to disregard that portion of Harold's answer expressing any opinion of appellant's prior conduct.[15]

14. Compare *Commonwealth v. Whitner,* 444 Pa. 556, 281 A.2d 870 (1971) (plurality opinion); *Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. New,* 354 Pa. 188, 47 A.2d 450 (1946).

15. The trial court delivered the following instruction on Harold Scott's volunteered response.

"THE COURT: Note for the record that the defendant is present, his counsel, and the District Attorney, and the jury has returned from a short recess.

"I would like to have the attention of the jury.

No challenge is made to the substance of this instruction. Indeed, both defense counsel and the prosecutor conferred with the trial court in reaching a satisfactory instruction. Appellant asserts, rather, that no instruction could cure the prejudice resulting from Harold Scott's volunteered response. We cannot agree. The fair and complete instruction given by the trial court removed whatever prejudicial effect may have been occasioned by Harold's spontaneous remark. *Commonwealth v. Ravenell,* 448 Pa. 162, 170–71, 292 A.2d 365, 369–70 (1972); [16] see *Commonwealth v. Martinolich,* 456 Pa. 136, 148–50, 318 A.2d 680, 687–88, cert.

"Just before we took a short recess the Commonwealth witness, Harold Scott was on the stand.

"His testimony had gotten to the point where the District Attorney had asked him, Scott, if he had come to the aid or assistance of the deceased under the circumstances which he, Scott, had related. Scott replied that he was afraid to come to the assistance of the deceased—I am paraphrasing and not giving his exact testimony.

"The District Attorney then propounded the question, 'What were you afraid of?' To which the witness Scott replied, 'Of them. I seen them work over people before.'

"Counsel for the defendant moved to strike from the record the latter part of this statement of the witness, and the Court is sustaining that motion of the defendant and is striking from the record the latter part of that statement of the witness Scott. That statement is irrelevant to the proceeding. I therefore instruct you to ignore that statement of the witness, and give no consideration to that statement in determining the guilt or innocence of this defendant of the crimes for which he is now standing trial.

"I direct that the statement of the witness should not be considered by the jury as evidence of any unlawful conduct of the defendant prior to August 10, 1970.

"Gentlemen, is that in accordance with what I discussed with you?

"MR. FITZPATRICK [Defense counsel] Yes, sir.

"MR. D'AMBROSIO [District attorney] Yes, Your Honor."

16. See *Commonwealth v. Hawkins,* 448 Pa. 206, 218–19, 292 A.2d 302, 308–09 (1972); *Commonwealth v. Koch,* 446 Pa. 469, 477, 288 A.2d 791, 795 (1970); *Commonwealth v. Beach,* 445 Pa. 257, 259–60, 284 A.2d 792, 793 (1971); *Commonwealth v. Brown,* 444 Pa. 318, 321–22, 282 A.2d 364, 366 (1971). But see *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

*Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972), cited by appellant, does not compel a contrary result. In *Allen,* it does not appear that curative instructions were given. Moreover, although curative instructions might not have been sufficient to obviate the

denied, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974) (improper comment by prosecutor cured by immediate instruction and jury charge; ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge §§ 5.6(b), 5.7 (Approved Draft, 1972).

It is further asserted that the trial court failed to adequately charge on the weakness of accomplices' testimony. See generally 7 J. Wigmore, Evidence §§ 2056–60 (3d ed. 1940); 2 G. Henry, Pennsylvania Evidence § 798 (1953) and cases cited therein. Appellant requested and received a charge that if Marie Scott's statement that she witnessed Harold approaching the light-colored car was believed, then one could infer that Harold was appellant's accomplice, and that as an accomplice, Harold's testimony was suspect and should be viewed with careful scrutiny.

 Appellant urges that from Marie's testimony an inference could be drawn that Harold was Bloodworth's sole accomplice and that appellant was not at all involved.[17] An examination of Marie Scott's testimony unequivocally refutes this contention.[18] The trial court properly refused to

prejudice in *Allen,* we are convinced that on the facts presented here, the curative instruction was sufficient.

17. Appellant also argues that an additional charge on corrupt source should have been given as to Audrey Scott's testimony. According to appellant, Marie Scott's testimony, if believed, created a question whether Audrey Scott was an accomplice to the robbery of Townsend. The record does not support appellant's assertion; this point for charge was correctly refused. *Commonwealth v. Sisak,* 436 Pa. 262, 266–68, 259 A.2d 428, 430–32 (1969).

18. With respect to appellant's role in the August 11 incident, Marie Scott testified in the following fashion.

"Q. [District attorney] You said that Bloodworth was the one who was pulling him out of the car; is that right?

"A. [Marie Scott] Right.

"Q. Didn't you say earlier that Bloodworth was pushing him over to the passenger's side where Eddie [appellant] was?

"A. No, he wasn't pushing. He was pulling him.

"Q. Pulling him over. And what was Eddie doing?

"A. Eddie at the moment was trying to help. There was very little that he could do because of Red Blood [Bloodworth's sobriquet].

"Q. Eddie was trying to help who?

amend its charge on accomplice testimony in this respect. See *Commonwealth v. Sisak,* 436 Pa. 262, 266–68, 259 A.2d 428, 430–32 (1969).[19]

The judgment of sentence for murder of the second degree is reversed and a new trial granted. The judgment of sentence for aggravated robbery is affirmed.

EAGEN, C. J., and POMEROY, J., concur in the result.

NIX, J., concurs in the result in affirming the judgment of sentence for aggravated robbery and dissents from the reversal of the judgment of sentence for murder of the second degree.

JONES, former C. J., did not participate in the decision of this case.

"A. Red Blood.
"Q. Eddie was trying to help Red Blood drag the man out of the car, right?
"A. Yes."

**19.** Appellant advances two further arguments as requiring the grant of a new trial. First, it is asserted that the trial court improperly restricted appellant's cross-examination of Commonwealth witnesses. However, a review of the record indicates that the trial court only limited defense counsel's inquiry into matters that were clearly collateral. This was not error. *Commonwealth v. Fisher,* 447 Pa. 405, 413, 290 A.2d 262, 267 (1972); *McGoldrick v. Pennsylvania R. R.,* 430 Pa. 597, 600, 241 A.2d 90, 92 (1968); *Commonwealth v. Petrillo,* 341 Pa. 209, 223–27, 19 A.2d 288, 295–97 (1941). See generally 3A J. Wigmore, Evidence §§ 1001–1003 (Chadbourn rev. 1970). Second, appellant maintains that the introduction of the record of four prior convictions (three for burglary and one for an arson in connection with one of the burglaries; none older than nine years) violated our holding in *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). However, no objection was made to the introduction of these convictions. See *Commonwealth v. Katchmer,* 453 Pa. 461, 464, 309 A.2d 591, 593 (1973). Issues raised for the first time on appeal are waived and will not be considered by this Court. Pa.R.A.P. 302(a); *Commonwealth v. Carter,* 463 Pa. 310, 344 A.2d 846 (1975); *Commonwealth v. Strachan,* 460 Pa. 407, 333 A.2d 790 (1975); *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972).