428 A.2d 170

**COMMONWEALTH of Pennsylvania,**

v.

**James Vincent SANDUTCH, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1980.

Filed April 3, 1981.

Petition for Allowance of Appeal Granted Sept. 28, 1981.

---

Norma Chase, Pittsburgh, for appellant.

Chester B. Muroski, District Attorney, Wilkes-Barre, submitted a brief on behalf of Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellant was convicted by jury of attempted murder, aggravated assault and burglary. He was sentenced to five to ten years on the attempted murder charge and ten to twenty years on the burglary charge. All sentences were to run consecutively with a sentence appellant was already serving. Sandutch was ordered to pay costs of prosecution and compensate the victim for injuries. Posttrial motions were filed and denied. This appeal followed. The lower court denied defendant's motion in arrest of judgment. We affirm.

John R. Aufiero awoke when a burglar alarm connected from his restaurant called the "Pizza Shack" to his home began to ring. Aufiero, who had gone to his business to wait for the police to arrive, could see three men exiting his restaurant. When Aufiero attempted to stop one of the men, he was shot.

Seven days later, Aufiero was unable to identify his assailant. The trial court reasoned Aufiero's inability stemmed from his debilitated state as he continued to be in intensive care at the hospital.

Several weeks after the incident, police were able to make a composite drawing of the alleged attacker from information provided by Aufiero. Three months later, Aufiero was able to make a positive identification from a newspaper

picture he had seen. As a result of this identification, Sandutch was convicted.

Appellant presents four questions for answers. First, he charges trial counsel was ineffective because he failed to supplement the record when a motion for change of venue was argued. Second, he claims his trial was prejudiced by testimonial references to known criminals alleging they were associates of the appellant. Third, he asserts the Commonwealth was improperly allowed to impeach its witness by a showing of prior inconsistent statements. Fourth, he remonstrates that a former District Attorney's testimony was improperly admitted.

Sandutch was involved in numerous criminal proceedings before and during the time of the instant trial. His association with other alleged and convicted criminals brought him acclaim in the local press. In response to appellant's notoriety, he filed a motion for change of venue, alleging he would be unable to receive a fair trial in the county in which he was charged. Appellant claims his attorney was ineffective because he failed to introduce evidence of the extended publicity when a hearing was held on the motion. Sandutch states these actions could not have had any reasonable basis related "to his representation." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

The decision of a trial court to order a change of venue is one within its discretion. *Commonwealth v. Coder*, 252 Pa.Super. 508, 382 A.2d 131 (1977). The factors to be considered by the trial court are established in *Commonwealth v. Richey*, 249 Pa.Super. 365, 378 A.2d 338 (1977). We are satisfied that the lower court properly applied relevant consideration. Clearly, the underlying claim upon which appellant alleges ineffectiveness is without merit. We believe trial counsel was effective.

Appellant claims his trial was prejudiced by testimonial references to criminals which associated him with them. The relationship between Sandutch and these known criminals arose from a display of photographs to Aufiero of

persons known to have perpetrated past crimes. The trial court instructed the investigating officer to repeat his recollection of Aufiero's inability to identify Sandutch among the photographs. Therefore, in the jury's eyes there could be no association. The court's instruction removed whatever prejudice resulted from the photographic identification testimony. *Commonwealth v. Whitfield*, 474 Pa. 27, 376 A.2d 617 (1977) and citation presented therein, 474 Pa. at 44, 376 A.2d 626.

■ Sandutch argues the Commonwealth should not have been permitted to impeach its own witness. The Commonwealth called James Mastrota about whom the Commonwealth had understood he would testify that he was an active participant in the crime and that he witnessed appellant's participation in that incident. Yet, when Mastrota took the stand, he claimed not to be involved. Under these circumstances, the Commonwealth properly claimed surprise. The trial court correctly declared the witness hostile, and the Commonwealth appropriately cross-examined their witness by use of inconsistent statements. *Commonwealth v. London*, 461 Pa. 566, 337 A.2d 549 (1975).

■ Finally, appellant asserts the testimony of a former district attorney—now Judge Patrick J. Toole, Jr.—was improperly admitted. Judge Toole's testimony related Mastrota's claim that his prior inconsistent statements were coerced. Sandutch believes this testimony was improperly introduced because "it referred to collateral matters." Appellant's brief page 3, 18. This claim is without merit because the testimony given by Judge Toole did not go to a collateral matter, rather it focused on testimony which was key to the success or failure of the Commonwealth's case. *Commonwealth v. Whitfield, supra; Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262 (1972); *McGoldrick v. Pennsylvania R. R.*, 430 Pa. 597, 241 A.2d 90 (1968); *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A.2d 288 (1941).

Judgment affirmed.

VAN der VOORT, J., concurs.

SPAETH, J., files dissenting opinion.

SPAETH, Judge, dissenting:

Appellant argues that his trial counsel was ineffective in failing to introduce additional evidence in support of his application for a change of venue. Since we cannot decide this claim without knowing the nature of the evidence that appellant's counsel failed to produce, we should remand this case for an evidentiary hearing at which the lower court would determine what was the evidence not produced, and whether counsel's failure to produce it rendered him ineffective.

It appears that this case was one of several related cases, which generated a great deal of publicity about the breakup of a "crime ring" in Luzerne County. Appellant asserts that the most widely publicized of these cases involved the fire-bombing of the home of the Luzerne County deputy sheriff, in which the deputy sheriff and his wife and their three children were killed. Appellant's brief at 9.

Appellant filed motions for a change of venue in all of the cases in which he was charged. At a September 27, 1976, hearing on these motions, his trial counsel apparently presented considerable evidence of pre-trial publicity involving appellant.[1] In addition, representatives of local newspapers and television and radio stations testified concerning the size and distribution of their reading and listening audiences. On September 30, 1976, the lower court denied appellant's motions for a change of venue. In its opinion the court stated that it did not consider the publicity "so inflammatory and biased in factual presentation as to cause or be evidence of public prejudice or hysteria." Slip op. at 4. The court noted that the publicity, although extensive, was basically factual in nature and concerned largely with procedural developments in the case, and that a number of

1. The evidence apparently included copies of newspapers, copies of television and radio news scripts, and broadcast tapes. None of this material is included in the record as transmitted to us.

months had passed since the publicity generated by the crimes and the defendants' arrests. Slip op. at 3. It stressed that none of the publicity concerned confessions by either appellant or his co-defendant, or their past records for violent crimes. The court did stated that "they [were] charged with being members of a crime ring," but pointed out that "these [were] merely charges and not more." Slip op. at 4.

It is important to note that appellant does not challenge this ruling. His argument is that publicity generated *after* the ruling would have supported a change of venue, and that his trial counsel was ineffective in failing to present evidence of this new publicity.

According to appellant's brief, appellant's trial on charges stemming from the firebombing deaths began on October 25, 1976, and on November 5 he was found guilty by the jury of five counts of second degree murder, one count of arson, and one count of conspiracy. Appellant's brief at 9. On November 29, 1976, the day scheduled for jury selection in this case, appellant's counsel renewed his application for a change of venue. He asserted that the new publicity generated by the murder trial made it impossible for appellant to receive a fair trial in Luzerne County and asked the lower court's permission to introduce additional evidence in support of this motion. The following exchange then occurred:

THE COURT: If you wish to place any articles of publicity in the record at this time, you may do so, sir.

MR. O'HARE: Pardon, your Honor.

BY THE COURT: If you wish to place any articles relative to publicity at this time, you may do so and in effect you are asking me to reconsider my ruling because there was not anything submitted in support of your motion other than your basic statement.

MR. O'HARE: That is correct, your Honor.

BY THE COURT: Do you have something which you wish to submit in evidence?

MR. O'HARE: Not right now, not with me, Judge.

BY THE COURT: Then the ruling of the Court stands. I understood you intended to submit this motion when you came to court this morning.

MR. O'HARE: Pardon, your Honor?

BY THE COURT: Didn't you intend to submit this motion when you came to court today?

MR. O'HARE: Yes, your Honor.

BY THE COURT: And, in effect, you are not prepared to—

MR. O'HARE: Yes, I am prepared, your Honor.

BY THE COURT: —to submit anything in substantiation of—

MR. O'HARE: Not right now, your Honor, but I have the material I want to make part of this record. I'm up here by myself and my bag can only contain what I have in it.

BY THE COURT: Where is the material?

MR. O'HARE: In my office and I can have it sent right up, sir.

BY THE COURT: Where is your office?

MR. O'HARE: Bethlehem.

BY THE COURT: The ruling of the court shall remain.

N.T. at 10–11.

In his brief appellant argues that "[i]t is incumbent on counsel who asks the court to let him present new evidence on a pretrial issue the day of jury selection to bring the evidence with him to court, even if this means buying or borrowing a bigger bag." Appellant's brief at 10. I agree, for I can see "[no] *reasonable basis* designed to effectuate his client's interests" in appellant's counsel's actions. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 at 352 (1967) (emphasis in original). However, "[w]hile it is certainly true that 'sloth or lack of awareness of the available alternatives' may constitute ineffectiveness, *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440, 443 (1975), sloth is of no consequence if diligent effort would have been unavailing." *Commonwealth v. Hubbard*, 472 Pa.

259, 282, 372 A.2d 687, 698 (1977). Since I cannot evaluate the merits of appellant's venue argument on the basis of the record, I should remand this case for an evidentiary hearing to determine what additional evidence appellant's trial counsel had in his office but did not bring to court and whether counsel's failure to bring it to court rendered him ineffective.